## CLAWGES v. CLAWGES.

November 19, 1836.

*Rule to show cause why the writ and proceedings in partition should not be quashed.*

Under the act of the 19th April, 1794, the Courts of Common Pleas, and the District Court of the County of Philadelphia, &c., had not jurisdiction of an action of partition, where all the parties took title by descent from one who died intestate, and who was the sole owner of the lands.

It *seems* that the jurisdiction in case of intestacy belonged to the Orphan's Court.

This decision does not extend to the case of parties holding title by descent of an *undivided* portion of lands, where the co-tenant of the intestate holds by a different title.[a]

THIS was an action of partition. The facts of the case sufficiently appear in the opinion of the Court.

*Zantzinger,* for the rule.
*C. Ingersoll,* contra.

The opinion of the Court was delivered by
JONES, J.—This is an action of partition, and an application has

[a] See the act of 13th April, 1840, §§ 3, 4. (*Stroud's Purd. tit. Partition*), Brown *v.* Adams, 2 *Whart.* 188.

[Clawges v. Clawges.]

been made to quash the writ and the proceedings had upon it, on the ground that the parties to the action are heirs claiming the lands by descent, under the act of the 19th April, 1794. It is admitted that all the parties to this action make title by descent from John Clawges, who died intestate, on the — day of May, A. D. 1836, and who was the *sole* owner of the lands to be divided, at the time of his decease. He left a widow and three sons, and several grandchildren, the children of two deceased sons.

The act of the 19th April, 1794, § 22, provides that " to prevent *any doubts* which may hereafter arise *concerning the manner* in which the partition of the intestate's estate may be made, it shall be lawful for the Orphan's Court of the county, upon petition, to appoint seven or more persons, with the consent of the parties, or where the parties cannot agree," &c. &c. The phraseology of this section, and the recital by which it is introduced, was taken from the act 23d March, 1764, § 3, with some slight variations, into which it had been copied from the act of 4th Feb. 1748–9, entitled " an act for amending the laws relating to the partition and distribution of intestates' estates."

The *doubts* referred to in all these acts must therefore have arisen under the act of 1705, for the better settling of intestates' estates. By referring to the act of 1705, § 8, we find the following provision concerning the *manner* in which the partition of the intestate's estate might be made, viz. " The surplusage or remaining part of the intestate's lands, &c., shall be divided between the intestate's widow and children, or the survivors of them, *who shall* equally inherit, and *make partition as tenants in common may or can do.*" This clause, standing by itself, would refer the widow and the children to the writ of partition given to tenants in common by the statute 32d *Henry VIII., c.* 1: for that was the only means by which tenants in common might compel the partition of real estate. But the subsequent sections of this act of 1705 imply, that the proceeding might be had in the Orphan's Court for that purpose, although the power is not expressly given. Hence the *doubts concerning the manner* in which partition might be made, which were removed by the act of 3d Feb. 1748–9. And the act itself, which gave remedy by writ of partition to the widow and children of an intestate, was repealed by the act of the 19th April, 1794, § 22. It may be observed that, previously to the act of 1705, the distribution or partition of the estate of intestates was made by the Register General, (*Hall & Sellers' Edit. of the Laws of*

[Clawges v. Clawges.]

*Pennsylvania*, 1775, *appendix, page* 13). It would seem, therefore, that the doubts supposed to exist by the 22d section of the act of the 19th April, 1794, had been in fact removed by the act of the 4th Feb. 1748–9 (of which act the act of 1794 was in truth, as it respects this provision, a re-enactment) and that they were yet more effectually removed by the repeal of the act of 1705, in which alone the doubts had originated. It is important also to observe that the repeal of the act of 1705 (which was the first and the only act which could be supposed to give the widow and children of an intestate remedy by a writ of partition) by the act of 1794, which gave them an entirely different remedy, evinces an intention to take away the action of partition, if we should suppose that it might have been mantained concurrently with proceedings in the Orphan's Court, under the act of 1705, 4th Feb. 1748–9, and 23d March, 1764.

But there is another view of this question. The act of the 4th Feb. 1748–9, provided for the valuation of an intestate's estate, if it could not be divided without prejudice. This practice was continued by the act of the 23d March, 1764, and the act of the 19th April, 1794. But no such practice in the action of partition was allowed before the act of the 11th April, 1799. It is not correct to suppose that the act of the 11th April, 1799, is the origin of the jurisdiction of the common law courts of the action of partition. The occasion of that act, so far as it respects the jurisdiction of the Supreme Court, was the act of the 20th March, 1799, which established Circuit Courts instead of Courts of Nisi Prius; and the use of this act, in this respect, was to continue to that court the powers which it had exercised, before the alteration of its organization by the act of the 20th March, 1799. The act of 22d May, 1722, had given to the Supreme Court and the Courts of Common Pleas, jurisdiction of the action of partition; but the practice in the action was the same in Pennsylvania as it was in England under the statute of 32d *Henry VIII.*, c. 1. There was no authority to appraise the lands to be divided, however much a partition of them would be to the prejudice of the owners. Hence another object of the act of the 11th April, 1799, was to transfer *to the action* the practice authorized by the acts relating to partition in the Orphan's Court, of appraising land which could not be divided without prejudice, a practice which was recommended by the experience of nearly fifty years in that jurisdiction We cannot suppose that courts possessed of such different powers

[Clawges v. Clawges.]

or that proceedings which might end in such different results, were indiscriminately resorted to during half a century.

Another distinction deserves notice. The act of 1705, 4th Feb. 1748–9, 23d March, 1764, and the 19th April, 1794, give to the children and heirs of an intestate, the right to take the property in case of a valuation, the right to be exercised in a prescribed order or succession.

By the act of 1705, § 11, the eldest son was allowed to take the whole estate at the valuation, whether it would admit of partition or not. By the act of 4th Feb., 1748–9, the estate, in case of a valuation, was to be offered to the eldest son, and upon his refusal, to any of the other sons, successively. The act 23d March, 1764, §4, is still more minute in regulating the right of election, and the same system is continued by the act of the 19th April, 1794. But the act of the 11th April, 1799, though it adopted, in substance, the provisions of those laws requiring a valuation in cases where partition of the land could not be made without prejudice, not only omitted those which regulate the right of election, but expressly provided that in case each of the persons interested, or more than one of them, should be willing to take the lands at the appraised value, *the court should determine* to whom the land should be conveyed. The reason of this discrimination is obvious. The right of election is a remnant of the right of primogeniture, and which it was the purpose of the legislature to preserve, and (upon the refusal of the eldest son, or heir at common law) to transmit it somewhat according to the course by which real estate descends at the common law. The privity of blood between the parties, and the transmission of the estate to them by descent, justified the privilege of election or refusal, given first to the eldest son, and then to the other sons, successively. These reasons do not exist in cases of co-tenancy by purchase; and upon the supposition that the writ of partition is applicable only to such cases, they were properly omitted from the act of 11th April, 1799, and a different provision adopted. But if, on the other hand, the writ of partition can be used to compel the partition of an intestate's estate, between the heirs, then we must suppose that the legislature intended to take away, by the act of the 11th April, 1799, the right of election, which had been the subject of all the acts of assembly from the year 1705, relating to the settlement of intestates' estates; and

[*Clawges v. Clawges.*]

also, that they intended, notwithstanding the care they had taken
to preserve this right, and regulate its exercise, to put it in the
power of a younger son, or a daughter, or son-in-law, to defeat
it, by electing to proceed by way of the action of partition, instead
of an inquest in the Orphan's Court. It should be observed, too,
that by the act of 23d March, 1764, the widow's right in the land was
converted into a mere charge, an alteration that was indispensable
to the convenient operation of the system. This was, in effect, a
repeal of so much of the act of 1705 as gave to the widow the
remedy of a tenant in common. Upon a similar view of these
acts relating to the estates of intestates, this court decided, in the
case of Brown *v.* Adams, that the action of dower is not main-
tainable by the widow in cases where the husband died seized
and intestate of the lands of which dower is demanded.

But the act of the 7th April, 1807, is cited to prove that the
writ of partition may be maintained in this case. That act autho-
rizes the Courts of Common Pleas to issue writs of partition in all
cases in which partition is demanded of lands held in joint-tenancy,
*coparcenary*, or in common. The stress of the argument was
laid upon the word *coparcenary*, but the title of an heir under the
act of 19th April, 1794, is by the express terms of the act, a tenancy
in common. Besides, an estate in coparcenary is by descent at the
common law, and it differs in several respects from the estates
given by the act of assembly before mentioned. It is obvious
however, from the act itself, that the legislature did not intend to
give any new jurisdiction to the Court of Common Pleas, nor to
enlarge the use of the action of partition. Let the act be read
continuously as it is given in 4 *Smith's Laws*, 398. The first five
sections of the act relate to the action of partition—the 6th sec-
tion introduces the subject of the partition of an intestate's estate.
This section, and the others which follow it, are in *pari materia*
with the acts before mentioned relating to the settlement of an
intestate's estate. The Orphan's Court is not mentioned in the
first five sections of the act, though the Court of Common Pleas
is. The Court of Common Pleas is not mentioned in either of the
six remaining sections of the act, though the Orphan's Court is
repeatedly mentioned in connexion with proceedings for the par-
tition of the estates of intestates. The legislature appear to have
assumed that the jurisdiction of these courts is distinct and exclu-
sive of each other in respect to subject matter, and the new pro-
visions of this act are in furtherance of these distinct objects, but in

[Clawges v. Clawges.]

harmony with the antecedent practice of the respective courts. The Supreme Court, in the case of Rex v. Rex, 3 S. & R. 588, decided ten years after this act, appears to have taken the same view of the law; but having understood in the course of the argument that a different opinion has prevailed at this bar, we have carefully reviewed the acts of assembly relating to the question, although we suppose the case of Rex v. Rex is decisive of the question, yet without that case it appears to us that the Courts of Common Pleas, and consequently this court, have no jurisdiction; and however much we should regret to disturb proceedings which rest upon the supposed jurisdiction of this court in cases like this, we cannot think it right for that reason to assert a jurisdiction not given to us by the law. It is proper to add that this decision does not extend to the case of partition between the heirs of the undivided share of a tenant in common who has died intestate.

The rule, in this case, is made absolute.